Filing # 144602022 E-Filed 02/25/2022 09:41:41 AM



## IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
## IN AND FOR NASSAU COUNTY, FLORIDA

CASE NO. 22-CA-60

FARAHNAZ HREBENAR, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

DAVIS YULEE, LLC d/b/a DAVIS CHRYSLER
DODGE JEEP RAM OF YULEE,

    Defendant.

_____/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

Date 03/00/22 Time 9:00AM
B. Wood
Special Process Server
Special Services of Jax, Inc.
(904) 300-2122

### SUMMONS
### IMPORTANT

**To Each Sheriff of the State:**

YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on the following defendant:

    **DAVIS YULEE, LLC d/b/a DAVIS CHRYSLER DODGE JEEP RAM OF YULEE at the address of 464037 E State Rd 200, Yulee, FL 32097**

Each defendant is required to serve written defenses to the complaint or petition on plaintiff's attorney whose name and address is

    **HIRALDO, P.A.**
    Manuel Hiraldo
    400 E. Las Olas Boulevard,
    Suite 1400
    Ft. Lauderdale, Florida 33301
    Email: MHiraldo@Hiraldolaw.com
    Telephone: 954-400-4713

within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court (Nassau County Courthouse, Circuit Court) either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded

1

in the complaint or petition.

WITNESS my hand and the seal of said Court on ___February 25, 2022___.

**John A. Crawford**

CLERK OF THE CIRCUIT COURT NASSAU COUNTY, FLORIDA

By: ___Amy B. Ennis___

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT
IN AND FOR NASSAU COUNTY, FLORIDA

CASE NO.

FARAHNAZ HREBENAR, individually and
on behalf of all others similarly situated,

**CLASS ACTION**

Plaintiff,

**JURY TRIAL DEMANDED**

v.

DAVIS YULEE, LLC d/b/a DAVIS CHRYSLER
DODGE JEEP RAM OF YULEE,

Defendant.
_____/

## CLASS ACTION COMPLAINT

Plaintiff Farahnaz Hrebenar brings this class action against Defendant Davis Yulee, LLC d/b/a Davis Chrysler Dodge Jeep Ram of Yulee, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a class action under the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059, as amended by Senate Bill No. 1120.[1]

2. Defendant engages in telephonic sales calls to consumers without having secured prior express written consent as required by the FTSA.

3. Defendant's telephonic sales calls have caused Plaintiff and the Class members harm, including violations of their statutory rights, statutory damages, annoyance, nuisance, and invasion of their privacy.

---

[1] The amendment to the FTSA became effective on July 1, 2021.

1

4. Through this action, Plaintiff seeks an injunction and statutory damages on behalf of herself and the Class members, as defined below, and any other available legal or equitable remedies resulting from the unlawful actions of Defendant.

## PARTIES

5. At times relevant hereto Plaintiff was, a citizen and resident of Nassau County, Florida.

6. Plaintiff is, and at all times relevant hereto was, an individual and a "called party" as defined by Fla. Stat. § 501.059(1)(a) in that he was the regular user of cellular telephone number that received Defendant's telephonic sales calls.

7. Defendant is, and at all times relevant hereto was, a Florida corporation located in Yulee, Florida and a "telephone solicitor" as defined by Fla. Stat. § 501.059(f). Defendant maintains its primary place of business and headquarters in Yulee, Florida.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to Florida Rule of Civil Procedure 1.220 and Fla. Stat. § 26.012(2). The matter in controversy exceeds the sum or value of $30,000 exclusive of interest, costs, and attorney's fees.

9. Defendant is subject to general jurisdiction in Florida because Defendant is a resident of Yulee, Florida in Nassau County, Florida.

10. Venue for this action is proper in this Court pursuant to Fla. Stat. § 47.051 because the cause of action accrued in this County where Defendant is a resident.

## FACTS

2

11. From July 1, 2021 onward, Defendant sent the following telephonic sales calls to Plaintiff's cellular telephone numbers:

> +1 (904) 204-0304
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our June Sales Event is happening now! Until the end of the month, we are offering $3,250 off the 2021 RAM 1500 Big Horn and up to $1,250 off the 2021 Jeep Gladiator. Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our 4th of July Sales Event has been extended through the end of the month! We are offering $2,250 in rebates on the 2021 Ram 1500 Big Horn and $1,750 in rebates on the 2021 Renegade! Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our Make This Summer Sales Event is happening all month long! We are offering $2,500 off the 2021 Ram 1500 Big Horn Quad Cab and $1,750

> +1 (904) 204-0304
>
> off on the 2021 Jeep Gladiator Overland and Rubicon! Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our Labor Day Sales Event is happening all month long! Until the end of the month, receive up to $1,500 off the Jeep Gladiator! We also just received the all-new 2021 Grand Cherokee L and have plenty in stock. Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our Fall Sales Event is happening now! Until the end of the month, receive 0% APR for 72 months on the 2021 Ram 1500 Big Horn and a $2,000 rebate on the 2021 Gladiator Overland. Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our Black

> +1 (904) 204-0304
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our Holiday Sales Event is happening now! Until the end of the month, we are offering the 2021 RAM Big Horn for 0% APR for 72 months and 90 day no payments and up to $2,000 off the 2021 Gladiator Overland! Do you have time to discuss these offers with us?
>
> FARRAH,
> This is Seth, the General Sales Manager at Davis CDJR. Our New Year Sales Event is happening now! Until the end of the month, we are offering up to $2,500 in rebates on the 2021 Jeep Gladiator and up to $1,750 in rebates on the 2022 Compass! Do you have time to discuss these offers with us?
>
> You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe.

12. As demonstrated by the above screenshots, the purpose of Defendant's telephonic sales calls was to solicit the sale of consumer goods and/or services.

13. Plaintiff received telephonic sales calls from Defendant while in Florida and a Florida resident and therefore Defendant's violative conduct occurred in Florida.

14. At the time Plaintiff received the text messages, she was the subscriber and/or sole user of the cellular telephone that received the messages.

15. To transmit the above telephonic sales text message calls, Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

3

16. The number used by Defendant (904-204-0304) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

17. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

18. On January 31, 2022, Plaintiff responded "Stop" and immediately received an automated text message response from Defendant acknowledging Plaintiff's request and telling Plaintiff to respond "START" to resubscribe:



Today 10:04 AM

Stop

You have successfully been unsubscribed. You will not receive any more messages from this number. Reply START to resubscribe.

19. The impersonal and generic nature of Defendant's text messages, coupled with their frequency, and use of automated responses, demonstrates that Defendant utilized a computer software system that automatically selected and dialed Plaintiff's and the Class members' telephone numbers.

20. The number used by Defendant (904-204-0304) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*,

4

while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

21. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

22. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically made a series of calls to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the series of calls were initiated utilizing the Platform.

23. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiff and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

24. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

25. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

26. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

27. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

28. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

29. Compliance with the FTSA will not result in Defendant having to cease its business operations.

30. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

31. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

32. Because a substantial part of Defendant's FTSA violations occurred in Florida, requiring Defendant's compliance with the FTSA will not have the practical effect of regulating commerce occurring wholly outside of Florida.

33. The Platform has the capacity to select and dial numbers automatically from a list of numbers, which was in fact utilized by Defendant.

34. The Platform has the capacity to schedule the time and date for future transmission of text messages, which was in fact utilized by Defendant.

35. The Platform also has an auto-reply function that results in the automatic transmission of text messages.

36. Plaintiff never provided Defendant with express written consent authorizing Defendant to transmit telephonic sales calls to Plaintiff's cellular telephone number utilizing an automated system for the selection and dialing of telephone numbers.

37. More specifically, Plaintiff never signed any type of authorization permitting or allowing the placement of a telephonic sales call by text message using an automated system for the selection and dialing of telephone numbers.

38. Since July 1, 2021, Defendant sent at least 50 text message solicitations to as many consumers in Florida.

39. Defendant's unsolicited text messages caused Plaintiff harm, including invasion of privacy, aggravation, and annoyance. Defendant's call also inconvenienced Plaintiff, caused disruptions to Plaintiff's daily life, caused Plaintiff to waste time dealing with Defendant's unsolicited text message calls. Additionally, Defendant's unsolicited messages violated Plaintiff's substantive rights under the FTSA from be free from harassing calls like Defendant's.

## CLASS ALLEGATIONS

### PROPOSED CLASS

40. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3). The "Class" that Plaintiff seeks to represent is defined as:

> **All persons in Florida and/or Florida residents who, (1) were sent a telephonic sales call regarding Defendant's goods and/or services, (2) using the same equipment or type of equipment utilized to call Plaintiff.**

41. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the exact number of members in the Class but believes the Class members are at least 50 individuals.

### NUMEROSITY

42. Upon information and belief, Defendant has placed telephonic sales calls to telephone numbers belonging to at least 50 persons throughout Florida without their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

43. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

44. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether Defendant initiated telephonic sales calls to Plaintiff and the Class members; [2] Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls; and [3] Whether Defendant is liable for damages, and the amount of such damages.

45. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits telephonic sales calls without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

46. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

8

47. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**SUPERIORITY**

48. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

49. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF FLA. STAT. § 501.059**
**(On Behalf of Plaintiff and the Class)**

50. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

51. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers

9

or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

52. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

53. "Prior express written consent" means an agreement in writing that:

1. Bears the signature of the called party;

2. Clearly authorizes the person making or allowing the placement of a telephonic sales call by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephonic sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

3. Includes the telephone number to which the signatory authorizes a telephonic sales call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that:

   a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called; and

   b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

Fla. Stat. § 501.059(1)(g).

54. Defendant failed to secure prior express written consent from Plaintiff and the Class members.

55. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

56. Defendant made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

57. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above, and appointing Plaintiff as the representative of the Class and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Class;

c) An order declaring that Defendant's actions, as set out above, violate the FTSA;

d) An injunction requiring Defendant to cease all telephonic sales calls made without express written consent, and to otherwise protect the interests of the Class;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with the communications or transmittal of the calls as alleged herein.

DATED: February 25, 2022

Respectfully Submitted,

**EISENBAND LAW, P.A.**

*/s/Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092
*Counsel for Plaintiff*

**HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel S. Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
*Counsel for Plaintiff*

**IJH LAW**

By: */s/ Ignacio Hiraldo*
Ignacio Hiraldo, Esq.
1200 Brickell Ave.
Suite 1950
Miami, FL 33131

E: IJhiraldo@IJhlaw.com
T: 786-496-4469

13